IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) ) | Criminal No. 2:16-cr-00005-RWS-JCF |
| DOUGLAS L. PURDY, | ) ) | |
| Defendant. | ) ) ) | |

**MOTION TO QUASH SUBPOENAS OF VICTOR WARREN AND ROBIN WARREN FOR DOCUMENT PRODUCTION**

**INTRODUCTION**

On April 5, 2017, counsel for defendant Douglas Purdy issued trial subpoenas to Victor Warren and Robin Warren ("Warren Subpoenas"), commanding that documents be produced on May 10, 2017 to Defendant's counsel's law firm. The Government was made aware of these subpoenas on April 24, 2017. Defense counsel may have issued additional subpoenas to others; because they were issued without notice to the Government, the Government does not know how many individuals received a subpoena or the content of the subpoenas. The Government does not intend to use either of the Warrens as a trial witness.

1

The United States moves this Court for an order (1) to quash, pursuant to Rule 17(c)(2) of the Federal Rules of Criminal Procedure, the subpoenas of Victor Warren and of Robin Warren for the production of documents; (2) to quash any additional Rule 17(c) subpoenas that defense counsel has issued without notifying the Government; and (3) ordering that Defendant notify any recipients of such subpoenas of this filing and the Court's disposition of it. In the alternative, the United States respectfully requests that the Court order the production in the courtroom, for all parties, any documents or things produced pursuant to Rule 17(c) subpoenas commanding pretrial return.

Both subpoenas require that the Warrens produce to Defense counsel's office the following documents:

> "Communications between you or your attorneys, representatives, or agents, and any attorneys or employees of the United States Department of Justice and any Divisions thereof, at any time from January 1, 2007, to present. For the purposes of this request, the term 'communications' means the transfer of information, by any means, whether written, printed, electronic, or oral."

(Warren Subpoenas Ex. A, attached.) The overly broad nature of the request and the failure to make the request with specificity amounts to an impermissible "fishing expedition" intended to uncover additional discovery. *See United States v. Nixon*, 418 U.S. 683, 699-700. These subpoenas for impermissible discovery attempt to contravene this Court's previous order barring Defendant's pursuit of a selective prosecution case and attempt to unearth material relating to the

Government's charging decisions. Additionally, Defendant's subpoenas did not follow proper Rule 17(c) procedure, which requires that responsive documents be produced to the Court and made available to both parties for inspection. For these reasons, the Government respectfully moves to quash these Rule 17(c) subpoenas.[1]

## BACKGROUND AND PROCEDURAL HISTORY

Defendant is charged with one count of bid rigging in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, and five counts of bank fraud in violation of 18 U.S.C. § 1344, in relation to foreclosure auctions in Forsyth County, Georgia.

Despite the Government having prosecuted a significant number of individuals besides Defendant for participating in the same or similar conduct in Metro Atlanta, on July 28, 2016, Defendant filed a motion seeking the dismissal of the Government's Indictment on the basis of selective prosecution and, in the

---

[1] While the Government is not a subpoena recipient, a party to a criminal case "has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982); *see also United States v. Steinger*, 2013 U.S. Dist. LEXIS 100740, at *4 (S.D. Fla., July 3, 2013) ("[The Seventh Circuit's] formulation appears to have been adopted by a majority of courts that have considered this subject. . . . The Court finds the "legitimate interests" test to be most faithful to the text of the rule and the purpose of the drafters."). Here, the Government has standing to move to quash Defendant's subpoenas based upon its interest in seeking to prevent a fishing expedition to pursue selective prosecution and/or jury nullification arguments already deemed impermissible by the Court. *United States v. Purdy*, 2016 U.S. Dist. LEXIS 163316 (N.D. Ga., Nov. 28, 2016). DKT # 34.

alternative, a request for discovery to support a selective prosecution claim. (Def.'s Mot. to Dismiss on Selective Prosecution, DKT # 24).  The Court found that Defendant had not made out the necessary elements of a selective prosecution case and denied both of Defendant's requests.  *United States v. Purdy*, 2016 U.S. Dist. LEXIS 163316 (N.D. Ga., Nov. 28, 2016).  DKT # 34.

Defendant, with his 17(c) subpoenas, appears to be attempting an end run around the Court's denial by requesting some of the same documents the Court already denied in discovery, in an effort to use any unearthed materials to improperly present evidence of selective prosecution to the jury for the purpose of jury nullification.

## **ARGUMENT**

### I.  **DEFENDANT'S SUBPOENAS SHOULD BE QUASHED BECAUSE THEY FAIL TO MEET THE STANDARDS SET FORTH BY RULE 17(C)**

Rule 17(c) of the Federal Rules of Criminal Procedure governs the issuance of subpoenas *duces tecum* for trial in federal criminal proceedings.  *United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984).  The Rule permits the parties to a federal criminal case to issue subpoenas prior to trial to compel the production of documents.  It states, in part:

> (1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court

4

> may permit the parties and their attorneys to inspect all or part of them.
>
> (2) Quashing or Modifying the Subpoena. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

Fed. R. Crim. P. 17(c).

Rule 16 of the Federal Rules of Criminal Procedure governs discovery in federal criminal cases. Rule 17(c)'s discretionary early-return-and-inspection provision was not to grant additional discovery, but merely to facilitate and expedite trials, in order that a trial may not be delayed while counsel are examining voluminous documents produced in response to a subpoena. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) ("[The Rule's] chief innovation was to expedite the trial by providing a time and place *before* trial for the inspection of the subpoenaed materials"); U*nited States v. Carter*, 15 F.R.D. 367, 369 (D.D.C. 1954) ("It was contemplated that a rule such as this would be particularly helpful in protracted trials in which there is a mass of documentary evidence, such as antitrust cases."); *see also Silverman*, 745 F.2d at 1397 ("[T]he rule was not intended to provide an additional means of discovery for any party in criminal cases.").

Rule 16 sets limitations on criminal discovery such as the types of information the government must disclose to the defendant, what types of information the government must disclose upon request, and government

5

information not subject to disclosure. Fed. R. Crim. P. 16(a). If Rule 17(c) were turned into a discovery device, it would contravene these strict limitations of discovery in criminal cases. *Bowman Dairy Co.*, 341 U.S. at 220 ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms."); *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) ("Courts must be careful that Rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16.").

Therefore, Rule 17(c) supplements, rather than amends, Rule 16. *See United States v. Cuthbertson*, 651 F.2d 189, 192 (3d Cir. 1981), *cert. denied*, 454 U.S. 1056 (1981) ("Rule 17(c) was not intended to be a broad discovery device, and only materials that are 'admissible as evidence' are subject to subpoena under the rule."); *Silverman*, 745 F.2d at 1397 ("[T]he rule only reaches specifically identified documents that will be admissible as evidence at trial, provided that the application for the subpoena is made in good faith.").

To protect against that danger, the Supreme Court found that Rule 17(c) requires the requesting party to show: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that failure to obtain

such production may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). Therefore, the requesting party must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700. "The requirement applies even when the moving party files an application for subpoena ex parte." *United States v. Thompson*, 310 F.R.D. 542, 544–545 (S.D. Fla., Oct. 7, 2015).

    Nothing in the Warren Subpoenas suggests that the called-for production will result in the disclosure of any admissible or relevant evidence. The requirements are not satisfied by a showing that the materials sought are potentially relevant or admissible; relevancy and admissibility must be established at the time they are sought. *United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965); *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992) ("These specificity and relevant elements require more than the title of a document and conjecture as to its contents.").

    Here, Defendant likely seeks to uncover irrelevant and inadmissible evidence to support his prior selective prosecution arguments. However, as previously mentioned, this Court has already denied Defendant's selective prosecution motion to dismiss the Government's Indictment and request for discovery to support his claim. Defendant's previous request was for, among other

7

things, "[d]ocuments reflecting any immunity, leniency, amnesty, or plea agreements relating to other bid rigging or bank fraud cases in connection with foreclosure auctions in the Northern District of Georgia within the last four years" and "[c]ommunications and correspondence between the government and any persons engaged in alleged bid rigging or bank fraud in connection with foreclosure auctions in the Northern District of Georgia made within the last four years." (Def.'s Mot. Summ. J. on Selective Prosecution, DKT # 24). In response, the Court determined that Defendant failed to meet the elements for a selective prosecution claim and denied discovery. *Purdy*, 2016 U.S. Dist. LEXIS 163316, at *1. DKT # 34.

Defendant now wishes to use a Rule 17(c) subpoena to uncover the same materials. But such materials are not relevant or material. For non-witnesses, the mere fact of non-prosecution of ostensibly similarly situated individuals is irrelevant because it neither tends to prove nor to disprove any fact at issue, Fed. R. Evid. 401(a), nor, for self-evident reasons, has utility for impeachment. *See United States v. Delgado*, 903 F.2d 1495, 1499 (11th Cir. 1990) ("Even if . . . evidence [of the government's decision not to prosecute] is relevant, it would not be admissible under Rule 403."); *United States v. Reed*, 641 F.3d 992, 993–94 (8th Cir. 2011) (collecting cases and observing that "[s]everal circuits have unanimously upheld the exclusion of prior charging decisions on the ground that many factors unrelated

to guilt may influence those decisions and their admission therefore risks misleading the jury and confusing the issues").

In fact, this is exactly what happened in a similar case, when defense counsel made similar arguments, in *United States v. Hill*, before Judge Thomas W. Thrash, Jr.:

> Mr. Gillen:  If there is documentation in their memoranda which I believe exists ranking the individuals within metro Atlanta in terms of culpability . . . that governmental ranking could be used by the defense to impeach individuals who . . . might be called and would reflect upon their bias and their proclivities to testify favorably for the Government.  Because, hypothetically, if they were ranked in the highest one or two of the individuals associated with these auctions that were prosecuted, that would be something that we should be able to probe on cross-examination from the Government's memoranda which I firmly believe exists.
>
> The Court:  I'm going to deny the Defendant's motion to compel. . . . I believe this is just an effort by the Defendant to go through the Government's work product in general and try to find material that will support his theory apparently of selective prosecution which I don't think is going to be a viable theory of defense at the trial of this case anyway. . . . With respect to any ranking of culpability of people who engaged in this type of bid rigging, number one, if there is any such ranking of culpability it's totally irrelevant to Mr. Hill's culpability and it's not exculpatory.  The fact that other people who were engaged in this conduct may have been less culpable than Mr. Hill or more culpable than Mr. Hill is completely irrelevant to whether or not he's guilty of the offenses alleged in the indictment.  And I think that any effort by Mr. Hill to put on a defense that is based on the idea that, well, other people committed this crime and did so in a more egregious or larger way than I did is simply not a valid defense; and any evidence of that will be excluded by me under Rule 403.
>
> (Hill Tr. Ex. B, 6:9–20, 16:7–17:20, attached.)

If the requested communications could not be used to advance a selective prosecution case, the only purpose they could serve would be the highly improper purpose of jury nullification.  It appears that Defendant's strategy is to appeal to the jury's sympathy and sense of injustice by insinuating that the Government's charging decisions were unfair or otherwise improper.

But, as the Eleventh Circuit has explained in no uncertain terms, that type of pandering has no place in a court of law.  *See, e.g.*, *United States v. Rushin*, 844 F.3d 933, 939–40; *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983) ("Appellant's jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice.  While we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath.").  Courts have wide latitude to exclude evidence or argument that promotes jury nullification because it invites the jury to render a "lawless" verdict that "constitute[s] an exercise of erroneously seized power."  *Rushin*, 844 F.3d at 939 (citations and quotation marks omitted).

Finally, the Warren Subpoenas fail Rule 17(c)'s specificity requirement because of their overly-broad requests.  The subpoenas seemingly call for all communications between the Warrens' counsel and the Justice Department over

the last decade.

Defendant is merely hoping to find admissible evidence somewhere within the subpoenaed materials.  Mere hope, however, that an individual may find useful evidence does not justify the production of documents pursuant to a trial subpoena.  *See Silverman*, 745 F.2d at 1397 ("[T]he rule only reaches specifically identified documents that will be admissible as evidence at trial."); *United States v. Hardy*, 224 F.3d 752, 755–56 (8th Cir. 2000) (finding that the district court properly granted the government's motion to quash a subpoena *duces tecum* for tapes of police radio communications where defendant could explain why tapes might be helpful but did not know what the recorded communications said); *Arditti*, 955 F.2d at 346 ("[Defendant] has demonstrated why he wants to look into the material, but he has not set forth what the subpoena's materials contain.").

## II.   EVIDENCE SHOULD BE AVAILABLE TO BOTH PARTIES AND REQUESTS FOR TRIAL SUBPOENAS SHOULD BE MADE IN COURT

Rule 17(c) must be cabined close to its text and its purpose: the efficient production of specific, admissible evidence in the courtroom.  Just like when evidence is subpoenaed for trial, Rule 17(c) ensures that all parties are present in the courtroom and hear the evidence simultaneously.  This requirement ensures that a party requesting early return cannot thereby obtain an informational advantage.  The evidence is to be produced in court, and "[w]hen the items arrive,

the court may permit the parties and their attorneys to inspect all or part of them." Fed. R. Crim. P. 17(c); *see also United States v Najarian*, 164 F.R.D. 484, 489 (D. Minn. 1995) (explaining that the plain language of Rule 17(c) requiring that documents being subpoenaed to be produced before court reveals the express intent that the court supervise production of evidentiary materials in advance of trial).

By allowing both parties inspection, the Rule confers no informational advantage on either party. *United States v. Jenkins*, 895 F. Supp. 1389, 1394 (D. Haw. 1995) (finding that the magistrate erred in allowing the documents to be turned over directly to the defense and not to the court, as well by failing to permit both the government and the defendant to examine the document). Thus, a party that gets a trial subpoena for early return takes the same risk as a party who elicits evidence at trial: the evidence may not be favorable. To allow otherwise would be to convert Rule 17(c) into a discovery device for the benefit of only one party.

## CONCLUSION

For the foregoing reasons, the Court should quash Defendant's subpoenas and order that Defendant notify any recipients of such subpoenas of this filing and the Court's disposition of it. In the alternative, the Court should order the production in the courtroom any documents or things produced pursuant to Rule 17(c) subpoenas commanding pretrial return.

The Government respectfully requests a hearing in front of Your Honor to determine the matter, in person or by phone, prior to May 10, 2017, which is the date the Warren Subpoenas command production.

        /s/ Matthew Stegman
        Matthew Stegman
        District of Columbia Bar No. 1015677
        Trial Attorney
        Washington Criminal II Section
        U.S. Department of Justice
        Antitrust Division
        450 5th Street, N.W.
        Washington D.C. 20530
        Tel:   (202) 598-8381
        Fax:  (202) 598-2428
        E-mail: Matthew.Stegman@usdoj.gov

## **CERTIFICATION**

The undersigned hereby certifies that he has conferred with counsel for the Defendant in a good faith effort to resolve the subject-matter of this Motion and Stipulation by agreement, and was able to reach agreement on the resolution of the issue herein, pursuant to N.D.Ga.L.Crim.R. 12.1D.  The undersigned also certifies, pursuant to Local Rule 7.1D, that the foregoing Motion and Stipulation has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in  Local Rules 5.1B and 5.1C.

/s/ Matthew Stegman
Matthew Stegman
District of Columbia Bar No. 1015677
Trial Attorney
Washington Criminal II Section
U.S. Department of Justice
Antitrust Division
450 5th Street, N.W.
Washington D.C. 20530
Tel:   (202) 598-8381
Fax:  (202) 598-2428
E-mail: Matthew.Stegman@usdoj.gov

## **CERTIFICATE OF SERVICE**

This is to certify that the undersigned has this date electronically filed the foregoing Notice with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

**Defense Counsel**

Craig Gillen, Esq.
Gillen, Withers & Lake LLC
3490 Piedmont Road, N.E.
Suite 1050
Atlanta, GA 30305
(404) 842-9700
cgillen@gwllawfirm.com


/s/ Matthew Stegman
Matthew Stegman
District of Columbia Bar  No. 1015677
Trial Attorney
Washington Criminal II Section
U.S. Department of Justice
Antitrust Division
450 5th Street, N.W.
Washington D.C. 20530
Tel:   (202) 598-8381
Fax:  (202) 598-2428
E-mail: Matthew.Stegman@usdoj.gov